JACK ROSENSTEIN, Appellee, v. MORRIS SMITH et al., Appellants.

No. 42511.

NOVEMBER 20, 1934.

1382

A. J. Myers, for appellants.

Vernon W. Lynch, for appellee.

MITCHELL, C. J.—Esther M. Smith is a resident of the city of Des Moines, Iowa, and for a period of some five years prior to the commencement of this lawsuit had been engaged in the business of transporting motion picture films, accessories, and advertising to various motion picture exhibitors in the state of Iowa. She operated her business under the trade-name of "Film Transportation Company." Her husband, Morris Smith, managed the business for her. She was the owner and holder of a certificate of convenience and necessity issued by the Iowa board of railroad commissioners, authorizing her to transport motion picture films and accessories over a certain described route, known in the record as route No. 3, and covering various cities and towns in the northern part of the state. For the privilege of operating this route, she paid the road or vehicle tax to the state of Iowa as provided by the laws of this state.

Jack Rosenstein, the appellee, is also a resident of Des Moines. In June of 1931 he entered the employ of the appellant Esther M. Smith, as a "pick-up" man, and then as relief driver, and later as a regular driver on one of her routes. On the 17th day of November, 1931, Rosenstein, the appellee, and Esther M. Smith, one of the appellants, entered into a written contract, known in the record as Exhibit A, under the terms of which the appellee was to receive 50 per cent of the proceeds of the business after the payment of the vehicle tax to the state of Iowa. About a month after Exhibit A was executed, Rosenstein claims that it was modified by a conversation which he had with the appellant Morris Smith at Iowa Falls. It is

the appellee's claim that the contract was modified, and that the appellants agreed if the route brought in over $140 per week the income would be divided 50 per cent to the appellants and 50 per cent to the appellee, and if under $140, Rosenstein was to be paid $70 per week. The appellee agreed he would carry a helper and pay him out of the amount of money which he received. Rosenstein claims he received $70 per week regularly thereafter up until some time in December, 1932; that he continued to work until March, 1933; and that between December and March he was only paid the sum of $100. He commenced this lawsuit to recover from the appellants the amount of wages due him, alleging in his petition there was due him the sum of $553.49. To the petition the appellants filed an answer and counterclaim, denying that they were indebted to him in any amount, and by way of counterclaim alleged that Rosenstein on or about the 3d of December, 1932, entered into the business of transporting films and accessories for himself, without first having obtained a permit from the Iowa board of railroad commissioners, and that the said Rosenstein had obtained certain confidential information regarding the business while in the employ of the said Esther M. Smith; that he had obtained a route list of all the customers and exhibitors, a schedule of the prices for the transportation of films, accessories, and advertising; that all of said information was confidential and was obtained by the said Rosenstein illegally; and that on account of the said illegal operation of the said Rosenstein and because of the confidential information obtained by him while in the employ of the said Esther M. Smith, she had suffered damages in the sum of $990, and asked judgment for said amount, plus interest and costs. The cause proceeded to trial and at the close of the evidence, upon the motion of appellee, the counterclaim of the appellants was withdrawn from the jury and the issue of whether or not the appellee was entitled to recover from the appellants was submitted to the jury. The jury returned a verdict in favor of the appellee in the amount of $323.58, plus costs. Within the time allowed by the court, the appellants filed a motion for new trial and exception to the court's instructions, both of which were duly overruled by the court, and the appellants have appealed to this court.

The first error complained of is the sustaining of the appellee's motion to dismiss the appellants' counterclaim, and the withdrawal of the same from the consideration of the jury. The

cause of action brought by the appellants in their counterclaim was in substance that a restraining order had been issued out of the district court of Cerro Gordo county, restraining the appellee from engaging in the transportation of films, and that on account of the said illegal operation of the said Rosenstein and because of the confidential information obtained by him while in the employ of Esther M. Smith, she had suffered damages in the amount of $990. In reply, Rosenstein admitted that at the time of the trial of the case a restraining order had been issued by the district court of Cerro Gordo county, restraining him from engaging in the transportation of films, but alleging that a stay order was granted, bond posted, and said cause was on appeal to the Supreme Court of the state of Iowa.

The motion of the appellee to dismiss the appellants' counterclaim and withdraw the same from the consideration of the jury was based upon four grounds. The motion was sustained generally. It is fundamental that if the lower court sustains a motion to dismiss, and motion is sustainable, upon any ground enumerated therein, the ruling will not be disturbed by this court. It is not necessary for us to discuss all of the grounds urged by the appellee. One of the grounds of the motion to dismiss assigned as a reason for the sustaining of the motion is that the appellants failed to show any breach of contract or any corresponding damage. It must be kept in mind that there was no express contract between the appellee and the appellants that upon the termination of the contract, Exhibit A, the appellee would not enter into the same line of business the appellants were engaged in.

In the case of Garst v. Scott, 114 Kan. 676, 220 P. 277, 278, 34 A. L. R. 395, it is said:

"There is a note on this subject, found in an annotation to Fulton Grand Laundry Co. v. Johnson [140 M'd. 359, 117 A. 753], supra, in 23 A. L. R. 420, 423, the first paragraph of which reads:

" 'It is held, in the majority of the cases which have passed on the question, that in the absence of an express contract, on taking a new employment in a competing business, an employee may solicit for his new employer the business of his former customers, and will not be enjoined from so doing, at the instance of his former employer.' * * *

"A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, and all the information that he has received,

so long as nothing is taken that is the property of the employer. Trade secrets are the property of the employer, and cannot be taken or used by the employee for his own benefit, but customers are not trade secrets. They are not property. The right to trade with them may be property, but that right was not interfered with by the defendant. Written lists of customers may be property, but the defendant did not take any such list."

In the case at bar there is no evidence in the record that the appellee in any way interfered with the right of the appellants to solicit business in any territory, and the record is entirely devoid of any evidence to show that the appellee took any written list of customers from the appellants. There is no showing in the record that Rosenstein at any time ever solicited any customer who was a customer of the appellants. Towns and cities were listed under the certificate of convenience and necessity and were a matter of public record. The only proof in the record which the appellants made in respect to damages was, first, that the cost of operation of business while Rosenstein and the appellants were associated and after he left was approximately the same. Second, the difference in the gross income prior to the time the appellee and the appellants severed relations and subsequent to that time. There is no showing in the record that because the income of the appellants decreased after Rosenstein left their employ, this was due to anything that he did. There is no showing what customers, if any, the appellee served after his relations with the appellants were severed. It thus appears that the appellants failed to prove by any competent evidence the essential allegations of their counterclaim, and that the lower court was right in sustaining the motion of the appellee to withdraw the counterclaim from the consideration of the jury.

The second ground urged by the appellants is that the issue as to Exhibit A, which was the written contract and which was later modified by an alleged oral agreement providing for a minimum guaranty of $70 per week, should not have been submitted to the jury because the appellee's own testimony completely negatives such agreement. The record shows that the appellants never requested the court to withdraw this issue from the consideration of the jury, either by motion or otherwise. There was competent evidence to support the issue. True, there is a conflict between the witnesses, and the lower court was right in submitting this question to the jury for its determination.

1386

■ The next error complained of is the giving by the court of instruction No. 4. The first part of instruction 4 is as follows:

"You are instructed that the plaintiff and defendants agreed orally after the execution of Exhibit A that in case of missouts and cartage the plaintiff and defendants would each pay one-half thereof."

It is the claim of the appellants that this statement by the court was extremely unfair and prejudicial to them. It appears from the record that the appellee admitted on the witness stand in case of a missout or cartage, which meant that when a shipment of films did not reach the motion picture exhibitor in time for a showing, and the transportation company was required to make some adjustment with the exhibitor for any loss which the latter may have sustained thereby, the appellee was to pay one-half of the cost of the missouts. Thus it appears that the court withdrew a substantial part of the appellee's claim from the jury's consideration, when the appellee admitted on cross-examination that those items should be deducted and that that was the understanding and agreement the appellee and appellants had. If the instruction was prejudicial, it was prejudicial to the appellee but certainly not to the appellants.

Other errors are urged, all of which have been given careful consideration by the court. The case was fairly tried. It was submitted to the jury upon proper instructions. The jury returned a verdict adverse to the appellants. We find no error in the court's instructions and there was sufficient evidence to justify the verdict of the jury.

Judgment of the lower court must be, and it is hereby, affirmed.

Evans, Kindig, Stevens, and Donegan, JJ., concur.